IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD DEAN HOWARD, JR.,

    Petitioner,

vs.

JAMES A. YATES, Warden,[1]

    Respondent.

No. 1:06-cv-00058 ALA (HC)

ORDER

Pending before the Court are Ronald Dean Howard, Jr.'s ("Petitioner") application for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254(a) (doc. 1), Respondent's Answer (doc. 11), and Petitioner's Reply (doc. 18). For the reasons discussed below, Petitioner's application is denied.

I

On May 10, 2000, a Fresno County Superior Court jury found Petitioner guilty of gross vehicular manslaughter, drunk driving with a blood alcohol content over .08, drunk driving with

---

[1] James A. Yates is substituted for his predecessor, Jeanne Woodford, as the warden where the prisoner is incarcerated, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1

bodily injury, and enhancements for inflicting great bodily injury and injuring or killing more than one person. (Answer, Ex. 1). Petitioner was sentenced to nine years and eight months in prison. (Answer, Ex. 1). This Court's independent research reveals that Petitioner filed a direct appeal in the California Court of Appeal for the Fifth Appellate District on June 22, 2000, case number F035932. Petitioner filed a petition for review of the California Court of Appeal's decision in the California Supreme Court on September 20, 2001, case number S100725. The Supreme Court denied the petition on October 24, 2001.

Petitioner filed a petition for a writ of habeas corpus in Fresno County Superior Court on April 27, 2005, case number 05CRW677449. On May 9, 2005, the Fresno County Superior Court denied Petitioner's petition, stating: "The I.W.T.I.P. does not override existing statutory restrictions on petitioner's ability to accrue time credits." On May 25, 2005, Petitioner filed a petition for a writ of habeas corpus in the California Court of Appeal for the Fifth Appellate District. That court denied the petition without comment on August 4, 2005. On August 18, 2005, Petitioner filed a petition for a writ of habeas corpus in the California Supreme Court. The petition was denied summarily.

II

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment:

> [s]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In reviewing a state court decision, the Court looks to the last reasoned state court decision. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Therefore, in assessing

1  Petitioner's entitlement to habeas relief, this Court must review the Fresno County Superior
2  Court's order denying the petition for a writ of habeas corpus. *See Franklin v. Johnson*, 290
3  F.3d 1223, 1233 n. 3 (9th Cir. 2002) (explaining that when a subsequent appeal is denied without
4  comment, a federal court must look to the last state court decision to actually address a claim).

III

A

Petitioner's federal habeas petition raises several claims for relief. First, Petitioner argues that the California Department of Corrections and Rehabilitation ("C.D.C.R.") deprived him of his constitutionally guaranteed liberty interest in half-time behavioral credits. (Petition at 3, 5; Reply at 2). Next, he claims that the C.D.C.R. denied him equal protection by awarding California Penal Code § 2934 waivers to similarly situated inmates. (Petition at 4-5). Third, Petitioner argues that the Court should estop Respondent from withholding behavioral credits under the doctrine of equitable estoppel. (Petition at 8-9).

B

California's original early release program permitted inmates convicted of crimes before January 1, 1983 to "reduce [their] term[s] under such section by one-third for good behavior and participation consistent with subdivision (d) of Section 1170.2." § 2931. California Penal Code § 2931(d) explicitly stated: "This section shall not apply to any person whose crime was committed on or after January 1, 1983."

In September 1982, the California Legislature enacted Penal Code § 2933, replacing the § 2931 behavioral credit system with a half-time work credit system. Section 2933(a) provides in pertinent part:

> Worktime credits shall apply for performance in work assignments and performance in elementary, high school, or vocational education programs . . . . For every six months of full-time performance in a credit qualifying program . . . a prisoner shall be awarded worktime credit reductions from his or her term of confinement of six months. Every prisoner who refuses

3

        to accept a full-time credit qualifying assignment or who is denied the opportunity to earn worktime credits . . . shall be awarded no worktime credit reduction.

Under § 2933(a), inmates earning worktime credits can reduce their respective terms by up to one-half of their prescribed sentences. The California Legislature made it clear that: "Worktime credit is a privilege, not a right. Worktime credit must be earned . . . ." § 2933(b).

To provide inmates subject to the § 2931 one-third behavioral credit system with the opportunity to earn half-time work credits under § 2933, the California Legislature enacted Penal Code § 2934. This statute applied only to inmates subject to § 2931, and allowed them to sign a waiver through which they exchanged their § 2931 earned behavioral credits for the ability to participate in the § 2933 half-time work credit system. Upon executing a § 2934 waiver, the C.D.C.R. would "auto-revest" the inmates's credits.[2]

In September 1994, the California Legislature enacted § 2933.1, which qualified the § 2933 half-time work credit system. Section 2933.1(a) states: "Notwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933." Therefore, despite the waiver program, any inmate with a felony conviction specified in § 667.5(c) can only reduce his sentence by fifteen percent.

C

An inmate does not have a constitutionally guaranteed liberty interest in behavioral

---

[2] "'Auto-revesting'" is a procedure whereby credits earned under Section 2931 are recalculated under Section 2933 once the inmate signs the Section 2934 [w]aiver. Hence, the inmate is ultimately treated as if he had been earning Section 2933 credits from the day he entered prison, even if he had been earning Section 2931 credits for several years before signing the waiver." *Carrizosa*, *infra* at *11 n. 11.

credits earned as a result of satisfactory behavior while in prison. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Carlo v. City of Chino*, 105 F.3d 493, 497 (9th Cir. 1997). A state, however, may create a liberty interest in behavioral credits through state statutes or prison regulations. *Superintendent v. Hill*, 472 U.S. 445, 453 (1985). State-created liberty interests are generally limited to protecting "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Ninth Circuit has held that § 2931 creates a constitutionally protected liberty interest in behavioral credits. *Toussaint v. McCarthy*, 801 F.2d 1080, 1094-95 (9th Cir. 1986).

      Petitioner sets forth five arguments to support his due process claim. In his petition, Petitioner claims that the C.D.C.R. denied him his protected interest in half-time credits. (Petition at 4). Respondent construed this as an argument that Petitioner believed he was entitled to half-time work credits. (Answer at 5). In Petitioner's Reply, he clarifies that he is entitled to half-time *behavioral* credits under both § 1191.3 and California Department of Operations Manual § 53130.4.2 ("D.O.M."). (Reply at 4-9). Petitioner admits he received all his earned worktime credits. (Reply at 2). Petitioner claims that he is entitled to half-time behavioral credits based on unspecified provisions in the Pleasant Valley I.W.T.I.P. Inmate Work Supervisor's Handbook ("Handbook"). (Reply at 2,4).[3] Petitioner argues that undefined provisions in the C.P.C. and D.O.M. allow him to combine worktime and behavioral credits to reduce his sentence up to one-half, (Reply at 4,11), and that § 2934 creates a liberty interest in half-time credits. (Petition at 3-4).

---

[3] The C.D.C.R. created the Inmate Work Training Incentive Program ("I.W.T.I.P.") pursuant to § 2933. (Petition, Ex. D, p. 1). Inmates who participate in the I.W.T.I.P. assignments receive worktime credit toward their sentences. (Petition, Ex. D., p.2).

Section 1191.3(a) requires that in all cases resulting in felony convictions, "at the time of sentencing or pronouncement of judgment in which sentencing is imposed, the court shall make an oral statement that statutory law permits the award of conduct and worktime credits up to one-third or one-half of the sentence that is imposed by the court . . . ."

Section 1191.3 does not create a liberty interest in half-time behavioral credits. Rather, it requires that the sentencing courts explain that the law "permits" inmates to obtain credits "up to" one-half of their prescribed sentences. The District Court for the Southern District of California has held that § 1191.3 requires that the sentencing judge inform an inmate that he or she *"may* be eligible for credits ranging from 0% to 50%, not that [the inmate] is automatically entitled to 50% . . . ." *Carrizosa v. Aarons*, No. 05-CV-1935-IEG (LSP), 2007 WL 2873661, at *6 (S.D. Cal. May 11, 2007). This Court agrees. Section 1191.3 does not bestow inmates with any right to receive work or behavioral credit, but instead provides inmates with a right to receive notice of its provisions. Section 1191.3 does not confer on Petitioner a right to earn behavioral credits.

2

Petitioner also argues that the mandatory language in D.O.M. § 53130.4.2 creates a constitutionally guaranteed liberty interest in behavioral credit. (Reply at 4-6). D.O.M. § 53130.4.2 states: "Inmates sentenced to prison on non-life terms, whose crimes were committed on or after 1-1-83, shall automatically be eligible to receive day-for-day credits under the provisions of PC 2933."

Petitioner's claim that the mandatory language "shall automatically" in D.O.M. § 53130.4.2 entitles him to a constitutionally guaranteed liberty interest fails. The mandatory language standard is inapplicable to determining whether an inmate has a protected liberty interest. In *Sandin*, 515 U.S. at 483-84, the Supreme Court abandoned the holding in *Hewitt v.*

*Helms*, 459 U.S. 460, 472 (1983), that mandatory language in statutes creates protected liberty interests for inmates. Instead, it stated:

> We recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. . . . But these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 484.

D.O.M. § 53130.4 qualifies the mandatory language in D.O.M. § 53130.4.2, stating: "Eligibility to earn day-for-day credits shall be determined by the type of crime committed and the specific date on which the commitment offense occurred." Thus, D.O.M. § 53130.4 informs inmates that half-time credit is not automatic. The C.D.C.R. must determine whether an inmate is eligible to earn day-for-day credit based on the nature and date of the committed crime.

Petitioner's reliance on D.O.M. § 53130.4.2 is unavailing because he is ineligible to earn half-time work credit because of the nature of his crime. Section 2933.1(a) states: "Notwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933." Included in the list of felonies that are limited to a fifteen percent work credit limit under § 667.5(c) is "[a]ny felony in which the defendant inflicts great bodily harm on any person other than an accomplice which has been charged and proved as provided for in section 12022.7." § 667.5(c)(8). On May 10, 2000, Petitioner was found guilty of gross vehicular manslaughter, and an enhancement under § 12022.7 for inflicting great bodily injury during the commission of a felony. (Answer, Ex. 1). Thus, Petitioner is limited under § 2933.1 to receiving fifteen percent worktime credits.

3

Petitioner also argues he has a protected liberty interest in "already earned [behavioral] credits" based upon the C.D.C.R.'s Pleasant Valley I.W.T.I.P. Inmate Work Supervisor's

Handbook. (Reply at 4). The Handbook states that the sole basis for credit awarded to inmates participating in the I.W.T.I.P. program is § 2933, which bestows worktime credits for participating in qualifying programs. (Reply, Ex. B, p. 1). Petitioner asserts that he has received all his worktime credits. (Reply at 2). Petitioner always has been ineligible to receive behavioral credits under § 2931. Petitioner, therefore, cannot rely on the Handbook to confer a liberty interest in behavioral credits because he is ineligible under § 2931 to receive behavioral credit and the Handbook prevents inmates from earning credit under § 2931 by virtue of their participation in I.W.T.I.P. (Reply, Ex. B).

4

Next, Petitioner argues that unspecified provisions in the C.P.C. and D.O.M. allow him to combine worktime and behavioral credits to shorten his sentence up to one-half. (Reply at 4, 11). Petitioner admits that he is limited to receiving fifteen percent worktime credits under § 2933.1, but argues that the C.P.C. does not impose a fifteen percent limit on earned behavioral credit. (Reply at 2).

Petitioner is not entitled to earn behavioral credits under § 2933 because he committed his offense after January 1, 1983. Section 2933 "eliminat[ed] good behavior credits for defendants committing crimes on or after January 1, 1983 and substitut[ed] in their place only 'worktime' credits for participation in qualifying programs." *People v. Caruso*, 161 Cal. App. 3d 13, 19 (Cal. Ct. App. 1984).

5

Petitioner's argument that § 2934 creates a constitutionally guaranteed liberty interest in half-time credit also fails. (Petition at 3-4). The purpose of § 2934 is to allow inmates who were eligible and earned behavioral credits to auto-revest those credits for half-time credits. A § 2934 waiver, however, cannot serve as a liberty interest in half-time credit where an inmate, such as Petitioner, is ineligible *ab initio* to earn behavioral credit or half-time credit under §§ 2931 and

8

2933, respectively.

Petitioner has failed to establish a liberty interest in any behavioral or half-time credits. Therefore, Petitioner's denial of credit he is ineligible to receive is not a "restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

D

The Equal Protection Clause of the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Rational basis review is the appropriate standard to address Petitioner's equal protection claim, because there is no *per se* constitutional right to early release from prison, *Toussaint*, 801 F.2d at 1095, and prison inmates are not a suspect class, *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998). Under the rational basis standard, the government violates equal protection if "the classification rests on grounds wholly irrelevant to the achievement of the State's objectives." *McGowan v. Maryland*, 366 U.S. 420, 425-26 (1961).

The California Legislature explained the state interest in enacting § 2933.1 as follows: "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect." Stats. 1994, ch. 713 (Assem. Bill No. 2716), § 2. The legislative intent underpinning § 2933.1 warrants the C.D.C.R.'s discriminatory practice of allocating credits to inmates depending upon their respective offenses. The state has a rational basis for discriminating against different inmates under § 2933.1. *See Kalka v. Vasquez*, 867 F.2d 546, 547 (9th Cir. 1989) (holding that California's different placement of inmates in prison work programs satisfies rational basis review).

Petitioner asserts that the C.D.C.R. violated his right to equal protection by allowing

other inmates "similarly situated, i.e., that committed an offense where they do not automatically get 'halftime' credits unless CDC lets them participate in IWTIP" to sign § 2934 waivers and earn half-time work credit under § 2933. (Petition at 3). Petitioner claims that the C.D.C.R. "arbitrarily and automatically" grants § 2934 waivers to fellow inmates who are excluded from receiving half-time credit under §§ 2931, 2933.1, 2933.2, and 2933.5. (Petition at 4). Petitioner's equal protection claim fails because his evidence does not establish that the C.D.C.R. gave § 2934 waivers to similarly situated inmates.

To support Petitioner's claim that the C.D.C.R. offers § 2934 waivers to "hundreds, if not thousands, of other similarly situated [inmates]," (Petition at 3), Petitioner provides Legal Status Summary ("L.S.S.") sheets of alleged similarly situated inmates who received § 2934 waivers. (Petition, Ex. A). Petitioner also included an executed § 2934 waiver from inmate MacDonald, C-24488. (Petition, Ex. A). Petitioner does not explain the relevance of the attached L.S.S. sheets or the executed waiver.

First, Petitioner's reliance on MacDonald's waiver is unfounded because Petitioner is not similarly situated to MacDonald. MacDonald was convicted of an offense committed before January 1, 1983, and therefore he qualified to earn behavioral credit under § 2931 and to sign a § 2934 waiver. (Petition, Ex. A). Petitioner was convicted of an offense after January 1, 1983; that fact disqualified him from receiving behavioral credit under § 2931.

Second, Petitioner's reliance on the L.S.S. sheets does not establish that he was treated differently from similarly situated inmates who were permitted to sign § 2634 waivers. If an inmate committed an underlying offense after 1982, a § 2634 waiver has no legal effect because that inmate was never entitled to behavioral credits subject to auto-revesting under § 2634. Petitioner falls into this category.

Petitioner has presented four L.S.S. sheets to support his equal protection claim. (Reply, Ex. A). All four L.S.S. sheets are immaterial to Petitioner's equal protection claim because each

10

inmate's respective term start date and waiver date are the same. (Reply, Ex. A). Those inmates had no behavioral credits to revest. Thus, like Petitioner, the inmates in the L.S.S. sheets did not receive any auto-revested behavioral credits. They did not qualify for the credit transfer because their term start dates and waiver dates are the same.

Petitioner has failed to establish that Respondent treated similarly situated inmates differently by awarding half-time credits to inmates subject to § 2933.1. Thus, Petitioner is not entitled to relief under 28 U.S.C. § 2254(a).

E

In his petition, Petitioner sets forth extensive case law under the doctrine of equitable estoppel. (Petition at 8-10). Petitioner, however, has failed to argue how these cases demonstrate that he is entitled to relief under equitable estoppel. (Petition at 8-10). Even if this Court liberally construes Petitioner's petition to find out whether he properly pleaded a claim for relief under the doctrine of equitable estoppel, Petitioner's argument fails.

"'[N]o contractual obligation may be enforced against a public agency unless it appears the agency was authorized by the Constitution or statute to incur the obligation; a contract entered by a governmental entity without the requisite constitutional or statutory authority is void and unenforceable.'" *Miller*, 999 F.2d at 392 (quoting *Air Quality Prods., Inc. v. California*, 91 Cal. App. 3d 340, 349 (Cal. Ct. App. 1979)). Section 2931 makes it clear that the C.D.C.R. has no authority to promise or award behavioral credits to Petitioner. Thus, this Court is precluded from enforcing any contract between the C.D.C.R. and Petitioner regarding behavioral credits.

The state court's denial of his petition for a writ of habeas corpus was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

/////

**Accordingly, IT IS HEREBY ORDERED that**:

1. Petitioner's application for a writ of habeas corpus is DENIED.

2. The Clerk of Court is DIRECTED to enter judgment in favor of the Respondent and close the case.

/////

Dated: September 2, 2008

/s/ Arthur L. Alarcón
UNITED STATES CIRCUIT JUDGE
Sitting by Designation